NOURSE & BOWLES, LLP
Attorneys for Plaintiff
EMERALD WAVE INC.
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE CROTTY**

------------------------------------------------------------X

EMERALD WAVE INC.

**08 CV 0125**

           Plaintiff,

    - against -                     08 Civ.    (  )

CKI MINERALS & METALS CO. LTD. and
CHINA KINGDOM INTERNATIONAL
GROUP CO. LTD.,

           Defendants.

------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S APPLICATION FOR AN ORDER
OF MARITIME ATTACHMENT AND GARNISHMENT
PURSUANT TO RULE B(1) OF THE SUPPLEMENTAL
RULES FOR CERTAIN ADMIRALTY AND MARITIME
<u>CLAIMS OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**

<u>PRELIMINARY STATEMENT</u>

Plaintiff, Emerald Wave Inc. ("Plaintiff") respectfully submits this

Memorandum of Law in support of its application for an order directing the

Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure in connection with Plaintiff's admiralty and maritime claims against defendants, CKI Minerals & Metals Co. Ltd. ("CKI") and China Kingdom International Group Co. Ltd. ("China Kingdom") (collectively "Defendants") in the amount of $2,048,121.22 resulting from breach of a charter party.

## STATEMENT OF FACTS

On or about November 7, 2007 a voyage charter party for the vessel M/V DD FIDELITY was entered into between, Plaintiff, as owner, and defendant, CKI, as charterer, for one voyage. Further, in consideration for Plaintiff entering into a voyage charter party with CKI, Defendant, China Kingdom undertook and guaranteed full performance of the charter party by CKI.

Plaintiff and the aforesaid vessel have loaded cargo for the voyage and are now duly performing the Charter voyage. The Charter provides that freight is 100% payable less commission within 5 banking days after completion of loading, signing and releasing of bills of lading, against Owner's invoice, and is earned on completion of loading, discountless and

non-returnable, vessel loss or not lost. Those conditions were all met but CKI has failed to pay the full amount of freight required to be paid under the Charter. This has resulted in the net amount of $1,680,110.20 freight being due and owing under the Charter by Defendant CKI to Plaintiff, no part of which has been paid although duly demanded. CKI's use of the vessel at the port of loading exceeded the amount of allowed laytime to CKI under the Charter giving rise to demurrage. CKI also failed to load the full Charter quantity of cargo for which deadfreight will be due. Port dues also will be due from Defendants as well as other costs and charges. Said other costs are not yet payable and Plaintiff reserves the right to amend the Verified Complaint to seek additional security for those costs, if unpaid.

Legal costs are recoverable in London arbitration and it is estimated that such costs, which includes arbitrators' fees, will amount to $200,000 at today's exchange rate. In addition, interest is recoverable which is estimated to be $168,011.02, based on a rate of interest of 5% for two (2) years on the principal amount due under the charter, all for a total claim by Plaintiff against Defendant of $2,048,121.22. Plaintiff seeks a maritime attachment and garnishment in this Court in the amount of $2,048,121.22 to provide security for its claims in the London arbitration.

# ARGUMENT
## AN ORDER AUTHORIZING THE ISSUANCE OF PROCESS OF MARITIME ATTACHMENT SHOULD BE GRANTED PURSUANT TO SUPPLEMENTAL RULE B(1) TO ALLOW ATTACHMENT OF DEFENDANT'S ASSETS IN THE HANDS OF NON-PARTIES TO THIS ACTION

Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rule B(1)"), specifically permits prejudgment attachment in admiralty or maritime cases whenever the defendant cannot be "found" with the district:

> With respect to any admiralty or maritime claim <u>in personam</u> a verified complaint may contain a prayer for process to attach the defendant's good and chattels, or credits and effects in the hands of garnishees to be named in the process up to the amount sued for, if the defendant shall not be found within the district. Such a complaint shall be accompanied by an affidavit signed by the plaintiff or the plaintiff's attorney that, to the affiant's knowledge, or to the best of the affiant's information and belief, the defendant cannot be found within the district. The verified complaint and affidavit shall be reviewed by the court and, if the conditions set forth in this rule appear to exist, an order so stating and authorizing process of attachment and garnishment shall issue.

Plaintiff's claims against CKI arose under a charter party which is a maritime contract and therefore is a claim within the admiralty jurisdiction of this Court. G. Gilmore & C. Black, <u>The Law of Admiralty</u> 22, n. 65 (2d ed.

1975); 1 Benedict On Admiralty § 184 at 12-11 (7th rev. ed. 2002). Vietrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713 (2d Cir. 1987); CTI-Container Leasing Corp. v. Oceanic Corp., 682 F.2d 377, 380, n.4 (2d Cir. 1982). Plaintiff's claims against China Group are based on China Group's guarantee of full performance of the maritime contract, which is an obligation enforceable in admiralty. See Japan Line, Ltd. v. Willco Oil Limited, 424 F. Supp. 1092, 1094 (D.Conn. 1976). Because Plaintiff possesses a maritime claim, it may secure a maritime attachment pursuant to Supplemental Rule B(1) against all assets and property (up to the amount of the claim) belonging to the Defendants which may be situated within the district "if the defendant[s] shall not be found within the district." Supplemental Rule B(1).

Application for a maritime attachment is ex parte and no advance notice is required.

As stated in the 1966 Advisory Committee Notes to Supplemental Rule B, no notice was provided for because "[n]one is required by the principles of due process, since it is assumed that the garnishee or custodian of the property attached will either notify the defendant or be deprived of the right to plead the judgment as a defense in an action against him by the defendant." In their

5

comments on the 1985 Amendment, the Committee noted that Supplemental Rule B was amended to provide for judicial scrutiny before the issuance of the attachment "to eliminate doubts as to whether the Rule is consistent with the principles of procedural due process enunciated by the Supreme Court . . . ." Further:

> The rule envisions that the order will issue when the plaintiff makes a prima facie showing that he has a maritime claim against the defendant in the amount sued for and the defendant is not present in the district. A simple order with conclusory findings is contemplated.
>
> Id.

Service of a writ of maritime attachment is not the same as an actual attachment. If there is no property in the garnishee's hands, there is no attachment, and therefore no requirement for notice under Local Rule B.2. If Rule B.1[1] were interpreted to require notice before any property was actually seized, that would enable a defendant to divert its funds and thus defeat the very purpose of maritime security in a case against a foreign or transient defendant. Therefore, Plaintiff may proceed *ex parte* and provide notice promptly <u>after</u> a successful attachment.

---

[1] Local Admiralty Rule B.1 "Affidavit That Defendant Is Not Found Within the District," states:
   The affidavit required by Supplemental Rule B(1) to accompany the complaint and the affidavit required by Supplemental Rule B(2)(c), shall list the efforts made by and on behalf of the plaintiff to find and serve the defendant within the district.

For purposes of Supplemental Rule B(1), the term "found within the district" presents a two-pronged inquiry. If the defendants cannot be found within the district for jurisdictional purposes and for service of process, an attachment is permissible. See Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir. 1963); see also 29 Moore's Federal Practice § 705.02[2][b] (Matthew Bender 3d ed.). As explained in the accompanying Affidavit of John P. Vayda, dated January 7, 2008, Defendants cannot be found within this District Court under this analysis. Accordingly, the issuance of an order of maritime attachment is proper.

Rule B attachment is also proper in aid of foreign litigation or arbitration. Polar Shipping Ltd. v. Oriental Shipping Corp., 680 F.2d. 627, 632 (9th Cir. 1982); Staronset Shipping Ltd. v. North Star Navigation Inc., 659 F. Supp. 189, 191 (S.D.N.Y. 1987); Andros Compania Maritima, S.A. v. Andre and Cie, S.A., 430 F. Supp. 88 (S.D.N.Y. 1977). See also Drys Shipping Corp. v. Freight of the M.S. DRYS, 558 F.2d 1050 (2d Cir. 1977).

Plaintiff seeks to attach Defendants' assets in the hands of non-parties. In order to attach Defendants' assets in the hands of non-parties, an order of attachment and garnishment is required. Plaintiff therefore respectfully requests that the Court issue an order authorizing process of maritime

attachment and garnishment in order to secure Plaintiff's claim in the amount of $2,048,121.22.

## CONCLUSION

By reason of the foregoing, it is respectfully submitted that this Court should issue an Order authorizing the issuance of Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B(1) and Plaintiff should have such other and further relief as is just and proper in the circumstances.

Dated:  New York, New York
        January 7, 2008

                          NOURSE & BOWLES, LLP
                          Attorneys for Plaintiff
                          EMERALD WAVE INC.

By: _____
     John P. Vayda (JV-0539)
     One Exchange Plaza
     At 55 Broadway
     New York, NY  10006-3030
     (212) 952-6200